IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA

VS.                              4:16-CR-00141-01-SWW

DONDRIKEZ D. WILSON

## ORDER

For the reasons set out below, Defendant's Motion for Compassionate Release (Doc. No. 80) is DENIED.

## I. BACKGROUND

On August 7, 2018, Defendant pled guilty of conspiracy to distribute and distribution methamphetamine (actual).[1] On November 29, 2018, he was sentenced to 70 months in prison.[2]

## II. DISCUSSION

Although the First Step Act made the procedural hurdles for compassionate release a bit less strenuous, a defendant still must establish "extraordinary and compelling reasons" and that release would not be contrary to the 18 U.S.C.

---

[1] Doc. Nos. 66, 67.

[2] Doc. Nos. 76, 78.

§ 3553(a) factors.[3]

Before a Defendant may seek compassionate release under the First Step Act, he must first make the request with the Bureau of Prisons and exhaust his administrative remedies there.[4] Defendant requested compassionate release from the warden on September 10, 2020, and it was denied October 19, 2020. Accordingly, the issue is properly before this Court.

Defendant seeks compassionate release because his diabetes and hypertension put him at higher risk if he contracted COVID-19.  First, these health conditions are not "extraordinary and compelling" reasons warranting release. Although the First Step Act did not define this phrase, it defers to the United States Sentencing Guidelines, which does set out examples.[5]  Defendant's health

---

[3] 18 U.S.C. § 3553(a)(2) mandates that any sentence imposed reflect the seriousness of the offense, afford adequate deterrence, protect the public, and provide the defendant with appropriate rehabilitation.

[4] See *United States v. Smith*, Case No. 4:95-CR-00019-LPR-4, Doc. No. 440 (E.D. Ark. May 14, 2020) (no jurisdiction when defendant fails to exhaust administrative remedies).

[5] Of course, this list predates the COVID-19 outbreak.  U.S.S.G § 1B1.13 cmt. n. 1.  The examples are: (1) the defendant's medical condition is such that he suffers from a "terminal illness" or the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (2) "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; (3) the defendant's family circumstances include either "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children" or "(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."

conditions are not listed. Furthermore, Defendant has provided no argument or evidence that his health conditions cannot be controlled with medication or that they prevent him from independently functioning within the prison. Second, "fear of contracting COVID-19 or of experiencing more intense symptoms than the average person are not extraordinary or compelling enough reasons for release."[6]

Defendant also seeks release so he can care for his mother who is terminally ill. Under the Guidelines, compassionate release may be warranted upon the "death or incapacitation of the caregiver of the defendant's minor child." Caring for one's sick parent is not a consideration.

Finally, Defendant is 32 years old and has served less than 50% of his sentence, so he does not meet the age and minimum served-time requirements under the Guidelines.

Even if Defendant could establish extraordinary and compelling reasons, his request for relief must be denied because of the § 3553(a) factors – specifically, a sentence reflecting the severity of the offense.

On April 1, 2015, Officers observed Defendant involved in drug transaction in Batesville, Arkansas. When he was pulled over while driving back to Searcy, he refused to exit the vehicle and fled, which resulted in a high-speed pursuit.

---

[6]*United States v. Osborne*, No. 4:05-CR-00109-BSM-12, 2020 WL 3258609, at *2 (E.D. Ark. June 16, 2020).

Eventually, he collided into the back of a patrol car. Eventually, officers retrieved 445 grams of methamphetamine that Defendant threw from the car. Several days later he admitted to a confidential informant that the threw his phone and a pound of methamphetamine from the car during the pursuit, and now owed a debt to "the Mexicans." In June 2015 through January 2016, confidential informants made three controlled purchases of methamphetamine. Ultimately, Defendant was responsible for 499.86 grams of methamphetamine (actual).

## CONCLUSION

For the reasons stated, Defendant's Motion for Compassionate Release (Doc. No. 80) is DENIED.

IT IS SO ORDERED, this 2nd day of April, 2021.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE